Victor **WICKERSHAM** and Jessie **B.** Wickersham, Appellants,

v.

**T. D. HARRIS**, Appellee.

No. 7044.

United States Court of Appeals
Tenth Circuit.
Jan. 23, 1963.

James N. Khourie, Oklahoma City, Okl., and Yvonne Cravens White (Ted J. Davis and Fuller, Smith, Mosburg & Davis, Oklahoma City, Okl., were with them on the brief), for appellants.

John McPherren, Oklahoma City, Okl. (Wilson & Massad, Frederick, Okl., and Foliart, Shepherd & McPherren, Oklahoma City, were with him on the brief), for appellee.

Before BRATTON, BREITENSTEIN and HILL, Circuit Judges.

BRATTON, Circuit Judge.

The purpose of this action was to recover compensation for services rendered in connection with the effectuation of a contract executed in the District of Columbia for the sale of land in Virginia belonging to defendants. One defense was that plaintiff acted without having a license as a real estate broker or salesman and therefore could not recover. The case was tried to the court without a jury and judgment was entered for plaintiff.

The evidence relating to the crucial facts is burdened with very few material differences or conflicts. Plaintiff resided in the District of Columbia, and defendants also maintained a residence there. For about thirty-five years, plaintiff had been engaged in the business of

trying to find purchasers for property owned by others. The essence of his business was in bringing together persons desiring to sell and persons desiring to purchase property. He did not have a license as a broker or as a salesman. Defendants were husband and wife. Other than to sign with her husband the contract subsequently referred to herein, she took no part in the contacts and negotiations leading up to the execution of such contract and therefore no further reference will be made to her as a party defendant. Defendant owned an estate in Virginia consisting of approximately 3,200 acres of land with timber and improvements thereon. Plaintiff and defendant had one or more conferences in respect to plaintiff obtaining a purchaser for the property. Plaintiff associated with himself Sidney Haimes in the effort to obtain a purchaser. Plaintiff talked with persons about the property and he left brochures with some of them. Among others, plaintiff contacted T. Edwin Chalmers, president of T. Edwin Chalmers, Inc., a corporation. Chalmers indicated an interest in purchasing the property. Plaintiff advised defendant that he thought he had a purchaser. Pursuant to arrangements made by plaintiff, Chalmers, Haimes, and plaintiff went to the home of defendant one night. Plaintiff suggested to Chalmers in advance that he take with him $5,000 in cash. Negotiations were conducted and a proposed contract was prepared. Defendant and Chalmers participated in the negotiating and defendant prepared the contract. Defendant signed it as seller; plaintiff signed it as agent; Haimes signed it as public relations agent; Chalmers signed it as purchaser; and Chalmers paid to defendant $5,000 on the purchase price. The contract provided that the total price for the property was $1,500,000; and that such price was to be paid part in cash at the execution thereof, part in cash at specified subsequent times, and part by the assumption of an existing indebtedness. The contract fixed a deadline in time to be met by the purchaser

and provided that upon his failure to meet it, all cash deposits previously made could be forfeited at the option of the seller. The contract provided that defendant should pay to plaintiff, his agent, a commission amounting to $150,-000. And the contract further provided that in the event of forfeiture of sums paid (except the first payment of $5,-000), plaintiff should receive one-half of the forfeited amount for his services. At the time of the execution of the contract and at certain times thereafter, defendant made payments to plaintiff in the aggregate amount of $4,000. After six payments of $5,000 each had been made on the purchase price of the property, defendant and Chalmers entered into a termination agreement in which the contract of purchase was expressly cancelled and terminated.

The Real Estate and Business Brokers' License Act of the District of Columbia makes provision for the issuance of licenses to real estate brokers and real estate salesmen. D.C.Code, § 45–1401 et seq. Section 1402 provides in part:

> " * * * 'real-estate broker' means any person, firm, association, partnership, or corporation (foreign or domestic) who, for another for a fee, commission, or any valuable consideration, or who, with the intention or in the expectation or upon the promise of receiving or collecting a fee, commission, or other valuable consideration, lists for sale, sells, exchanges, purchases, rents or leases or offers or attempts or agrees to negotiate a sale, exchange, purchase, lease, or rental of an estate or an interest in real estate, or collects or offers or attempts or agrees to collect rent or income for the use of real estate, or negotiates or offers or attempts or agrees to negotiate, a loan secured or to be secured by a mortgage deed of trust or other encumbrances upon or transfer of real estate, or who is engaged in the business of erecting houses or causing the erection of

houses for sale on his, their, or its land and who sells, offers, or attempts to sell such houses, or who, as owner or otherwise and as a whole or partial vocation sells, or through solicitation, advertising, or otherwise, offers or attempts to sell or to negotiate the sale of any lot or lots in any subdivision of land comprising ten lots or more."

The section further provides in substance that one acting for compensation or a valuable consideration in buying or selling real estate for another or offering for another to buy, sell, or exchange real estate for another is a real estate broker. And section 1407 provides in presently pertinent part that no person engaged in the business or acting in the capacity of a real estate broker or a real estate salesman within the District shall bring or maintain an action in the courts of the District for the collection of compensation for any services performed as such broker or salesman without alleging and proving that he was a duly licensed broker or salesman. The legislative purpose of the Act is to protect the public against evil, fraudulent, and dishonest practices which sometimes occur in the real estate brokerage business. And while the Act is in derogation of the common law, it must be construed in the light of such purpose. Eberman v. Massachusetts Bonding & Insurance Co., D.C.Mun.App., 41 A.2d 844.

■■ Considered as a whole, the Act constitutes an exercise of the police power for the protection of the public interest and therefore a contract for the payment of compensation to an unlicensed broker or salesman for services rendered as such is not merely unenforceable. It is void. Metzler v. Edwards, D.C.Mun.App., 53 A.2d 42; Massie v. Dudley, 173 Va. 42, 3 S.E.2d 176; Winston v. Kaspar American State Bank, 36 Ill.App.2d 423, 184 N.E.2d 725.

It was the expressed view of the trial court that plaintiff was a finder, and that as such he was entitled to recover compensation. California has statutory provisions substantially identical with sections 1402 and 1407, supra. And the courts of that state have held that an unlicensed person employed merely to procure a prospective purchaser and bring him in contact with the owner is not a broker within the meaning of such statutory provisions and may recover compensation for services rendered in producing a purchaser who subsequently purchases the property. Shaffer v. Beinhorn, 190 Cal. 569, 213 P. 960; Crofoot v. Spivak, 113 Cal.App.2d 146, 248 P.2d 45; Freeman v. Jergins, 125 Cal.App.2d 536, 271 P.2d 210; Palmer v. Wahler, 133 Cal.App.2d 705, 285 P.2d 8; Pawlak v. Cox, 148 Cal.App.2d 294, 306 P.2d 619.

The rule in other states having statutes not substantially different from sections 1402 and 1407, supra, is that one without a license as a real estate broker who accepts employment to procure a purchaser for property, who procures a prospective purchaser, and who by introduction or otherwise brings the owner and such prospective purchaser in contact with each other is not entitled to compensation upon completion of a sale. Baird v. Krancer, 138 Misc. 360, 246 N.Y.S. 85; Grammer v. Skagit Valley Lumber Co., 168 Wash. 677, 299 P. 376; Massie v. Dudley, supra; Alford v. Raschiatore, 163 Pa.Super. 635, 63 A. 2d 366. The essence of these cases is that to permit such a person to recover would in effect dilute the statutes and take from them much of the protection of the public interest they are designed to provide.

■■ Unless the contract of employment expressly or by necessary implication provides otherwise, the essential feature of a broker's conventional employment is to procure a purchaser for property ready, able, and willing to buy at the price and on the terms of the listing or at a different price and on different terms mutually agreed upon by the owner and the purchaser. And it is not a prerequisite to the right to compensation that the broker conduct the negotiations between the parties after they have been brought into con-

tact with each other through his efforts. Plaintiff did not have authority to submit, accept, or reject, offers or proposals. But he did have authority to procure a prospective purchaser. He did that and a contract of sale was entered into. While his authority was thus limited, he was a broker within the legislative intent and meaning of section 1402, supra. Baird v. Krancer, supra; Grammer v. Skagit Valley Lumber Co., supra; Massie v. Dudley, supra; Alford v. Raschiatore, supra. To hold that plaintiff did not act as a broker would strip the statute of much of the protection of the public interest it was designed to provide. Not having a license to act as a broker or salesman, plaintiff cannot recover.

The judgment is reversed and the cause is remanded.